Allison Schmidt, ESQ.
Nevada Bar No.: 10743
GHIDOTTI BERGER
8716 Spanish Ridge Ave #115
Las Vegas, NV 89148
Tel: (949) 427-2010
Fax: (949) 427-2732
Email: aschmidt@ghidottilaw.com

Attorney for Creditor
US Bank Trust N.A., as Trustee of
Igloo Series III Trust

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

| | |
|---|---|
| In re:<br><br>JOHNNY TARVER,<br><br>               Debtor. | **CASE NO.:** 19-12115-abl<br>**Chapter 13**<br><br>MOTION FOR RELIEF FROM STAY (11<br>U.S.C. *Section* 362 Bankruptcy Rule 4001) |

## I. INTRODUCTION

**COMES NOW,** US Bank Trust NA as Trustee of the Igloo Series III Trust ("**Movant**") and moves this Court for an order terminating the automatic stay, allowing Movant to proceed with and complete any and all contractual and statutory remedies incident to its security interest held in real

Motion for Relief
Page 1

**GHIDOTTI BERGER**
**ALLISON SCHMIDT**
**8716 SPANISH RIDGE AVE., #115**
**LAS VEGAS, NV 89148**
**PHONE: (949) 427-2010**
**FAX: (949) 427-2732**

property commonly described as 1255 Kenwood Road, Santa Barbara CA 93109 (the "**Property**"), and legally described as set forth in the Deed of Trust attached as an Exhibit to the declaration of BSI Financial Services in support of Movant's Motion for Relief from Stay, on file with the Court. Movant further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement and to contact the Borrowers via telephone or written correspondence to offer such an agreement, which shall be non-recourse unless included in a reaffirmation agreement. Movant further moves that, absent objection, the provisions of F.R.B.P. 4001(a)(3) be waived to avoid further deterioration of Movant's secured position.

## II. JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C § 1334 and 28 U.S.C. § 157(b)(2)(G). This case relates to a case under Title 11 of the United States Code ("**Code**"). This proceeding is defined as a "core proceeding" as that is defined in the Code.

## III. STANDING

Under 11 U.S.C. § 362, a party seeking relief from stay must be a "party in interest." To establish that Movant is a "party in interest," it must establish that it has at least a colorable claim to the property that is the subject of the motion. In the case at bar, Movant's claim is based on the Note and Deed of Trust attached to the declaration of BSI Financial Services in support of Movant's Motion for Relief from Stay, on file with the Court.  Movant's interest in the Note and Deed of Trust is described above.

The Deed of Trust acts as the security for the Debtor's payment on the Note. The Deed

Motion for Relief
Page 2

**GHIDOTTI BERGER**
**ALLISON SCHMIDT**
**8716 SPANISH RIDGE AVE., #115**
**LAS VEGAS, NV 89148**
**PHONE: (949) 427-2010**
**FAX: (949) 427-2732**

of Trust is recorded with the county in which the property is situated as evidence of the debt described in the Note for the benefit of any subsequent parties that may take an interest in the property described.

## IV. FACTS

Debtor filed this Chapter 13 bankruptcy case on April 5, 2019 (the "**Instant Petition**").  A Plan was filed on April 16, 2019.  The Plan treatment includes Creditor for direct payments. Creditor holds an Note dated July 3, 2003, in the principal amount of $300,000.00, which is secured by a Deed of Trust of the same date and is signed by Johnny Tarver and Larri Tarver secured by the real property located at 1255 Kenwood Road, Santa Barbara CA 93109.   Debtor filed an Ex Parte Motion for Referral to the MMM on May 7, 2018.

## V. INSTALLMENT DEFAULT

As of 8/15/2019 Debtor is post-petition due for the May 1, 2019 payment through August 1, 2019  monthly mortgage payment as follows:

| | | |
|---|---|---|
| 05/01/19-08/01/19 | 4 payments @ $1,455.84 | = $5823.36 |
| Attorney Fees and Costs | | = $1,081.00 |
| **Total Default** | | **= $6,904.36** |

## VI. AUTHORITY

### A. Cause Exists to Grant Relief Pursuant to Section 362(d)(1); Lack of Adequate Protection

Movant submits that cause exists to grant relief under *Section 362(d)(1)*. Bankruptcy Code *Section 362(d)(1)* provides that a party may seek relief from stay based upon "cause,"

GHIDOTTI BERGER
ALLISON SCHMIDT
8716 SPANISH RIDGE AVE., #115
LAS VEGAS, NV 89148
PHONE: (949) 427-2010
FAX:  (949) 427-2732

including lack of adequate protection.   Adequate protection can be offered in the form of cash or periodic payments or the existence of a sufficient equity cushion.

Movant submits that adequate protection in this case requires normal and periodic cash payments to Movant, as called for by the Note.   The Borrowers have not made a mortgage payment to Movant in **Four (4) months**.   A continuing failure to maintain required regular payments has been held, in and of itself, to constitute sufficient cause for granting a motion to modify the stay. (*In re Trident Corp.*, 19 BR 956,958 (Bankr. E.D. Pa. 1982), aff'd 22 BR 491 *(Bankr. E.D. Pa. 1982 (citing In re Hinkle*, 14 BR 202, 204 (Bankr. E.D. Pa. 1981); *see also In re Jones*, 189 BR 13, 15 (Bank. E.D. Okla 1995) (citing *Hinkle*, 14 BR at 204)).   The Borrower's failure to tender regular ongoing monthly mortgage payments is sufficient cause to terminate the automatic stay.

## VII.    CONCLUSION

THEREFORE, Movant respectfully requests an Order be entered by this Court as follows:

1.  Terminating the automatic stay pursuant to 11 U.S.C. §362 allowing Movant to immediately proceed with and complete any and all contractual and statutory remedies incident to the security interest held under its Note and Deed of Trust in the Property;

2.  That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived;

3.  That the co-debtor stay be modified or terminated on the same terms as the automatic stay.

4.  Granting Movant leave to foreclose on the Property and to enforce the security interest under the Note and Deed of Trust, including any action necessary to obtain possession of the Property;

5.  Permitting Movant to offer and provide Borrowers with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement and to enter into such agreement with Borrowers;

Motion for Relief
Page 4

**GHIDOTTI BERGER**
**ALLISON SCHMIDT**
**8716 SPANISH RIDGE AVE., #115**
**LAS VEGAS, NV 89148**
**PHONE: (949) 427-2010**
**FAX: (949) 427-2732**

6.   That the attorney's fees and costs incurred by Movant for filing the instant Motion be included in the outstanding balance of the Note as allowed under applicable non-bankruptcy law; and

7.   For such other and further relief as the Court deems just and proper.

GHIDOTTI BERGER, LLP

DATED: August 26, 2019

By: /s/ Allison Schmidt, Esq.
Allison Schmidt, Esq.
Nevada Bar No.: 10743
Ghidotti Berger
8716 Spanish Ridge Ave., #115
Las Vegas, NV 89148
Phone: (949) 427-2010
Fax: (949) 427-2732

Motion for Relief
Page 5

GHIDOTTI BERGER
ALLISON SCHMIDT
8716 SPANISH RIDGE AVE., #115
LAS VEGAS, NV 89148
PHONE: (949) 427-2010
FAX:  (949) 427-2732

1   Allison Schmidt, ESQ.
    Nevada Bar No.: 10743
2   GHIDOTTI BERGER
    8716 Spanish Ridge Ave #115
3   Las Vegas, NV 89148
    Tel: (949) 427-2010
4   Fax: (949) 427-2732
    Email: aschmidt@ghidottilaw.com
5

6   Attorney for Creditor
    US Bank Trust N.A., as Trustee of
7   Igloo Series III Trust

8

9                    UNITED STATES BANKRUPTCY COURT

10                        DISTRICT OF NEVADA

11                        LAS VEGAS DIVISION

12

13  In re:                              **CASE NO.:** 19-12115-abl

14                                      **Chapter 13**

15  JOHNNY TARVER,

16             Debtor.                   **DECLARATION IN SUPPORT OF**
                                         **MOTION FOR RELIEF FROM THE**
17                                       **AUTOMATIC STAY**

18
                                         **Estimated Time:** 10 Minutes
19

20

21

22

23

24

25  I,   Raymond Valderrama    , declare and state as follows:

26        1.  I am over the age of eighteen years and not a party to this action.  The facts set for the below

27  are known to me personally based upon the review of the business records and I have first-hand

28

                                        1                                    19-12115
                                              Declaration Re Relief from the Automatic Stay

1  knowledge of them.  If called as a witness, I could and would testify competently under oath to such
2  facts.

3   1.   I am employed by BSI Financial Services, servicing agent for US Bank Trust N.A., as Trustee
4       of the Igloo Series III Trust ("**Movant**") as   Assistant Vice President                .

5   2.   I am familiar with the manner and procedure by which the records of Movant are obtained,
6  prepared, and maintained.  Those records are obtained, prepared, and maintained by employees or
7  agents of Movant in the performance of their regular business duties at or near the time, act,
8  conditions, or events recorded thereon.  The records are made either by persons with knowledge of
9  the matters they record or from information obtained by person with such knowledge.  It is my
10  business practice to maintain these records in the regular course of business.

11   3.   Movant has been responsible for the handling of all matters relative to the underlying loan
12  prior to the filing of the within motion, including but not limited to processing of all payments
13  received, crediting of received payments, adding all proper charges to the loan, confirming the
14  maintenance of hazard insurance and property taxes, property preservation where appropriate,
15  communicating with and responding to the borrower on all matters relative to the loan, and the
16  commencement of non-judicial foreclosure proceedings where appropriate.  All activities on the loan
17  advanced by Movant were advanced in accordance with the terms of the Contract.

18   4.   On or about July 3, 2003, the Debtor executed an Adjustable Rate Note with an
19  original principal balance in the amount of $300,000.  A true and correct copy of the Note is attached
20  hereto as Exhibit "A".

21   5.   On or about July 3, 2003, Debtor executed a Deed of Trust, encumbering the
22  Property, recorded in the Official Records of Santa Barbara California on July 17, 2003, as
23  Document No.: 2003-0095061 (the "**Deed of Trust**").  A true and correct copy of the Deed of Trust
24  is attached hereto as Exhibit "B".

25   6.   Thereafter all beneficial interest in the Note and Deed of Trust were assigned to Movant.  A
26  true and correct copy of each Assignment is attached hereto as Exhibit "C" and is incorporated
27  herein.

28

7.  Debtor filed this Chapter 13 bankruptcy case on April 5, 2019 (the "**Instant Petition**").

8.  Debtor is post-petition due for the May 1, 2019 payment through August 1, 2018 monthly mortgage payment as follows:

| 04/01/19-08/01/19 | 4 payments @ $1,455.84 | = $5823.36 |
| Attorney Fees and Costs | | = $1,081.00 |
| **Total Default** | | = **$6,904.36** |

9.  As of 8/7/19 the total owed to Movant totals no less than $272,047.21.

10. As of 8/7/19 the outstanding principal balance totals no less than $221,706.52.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 8/21/2019 (Date)    Irvine _____ (City), CA _____ (State)

_____
Signature

_____
Raymond Valderrama
Print Name

19-12115
Declaration Re Relief from the Automatic Stay

# Exhibit "A"



**NOTE**

July 3, 2003         SANTA BARBARA   ,   California
                                 CITY                           STATE

1255 KENWOOD ROAD, SANTA BARBARA, CA 93109
PROPERTY ADDRESS

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 300,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Washington Mutual Bank, FA . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on September, 2003 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to as of its scheduled due date and will be applied to interest before Principal. If on August 1st, 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at 9451 CORBIN AVE, NORTHRIDGE, CA 91324 , or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,610.46 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

1538 (03-01)                                 **Page 1 of 4**                               **ORIGINAL**



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce

1538 (03-01)                                    **Page 2 of 4**                                    **ORIGINAL**

its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed ( the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. MISCELLANEOUS PROVISIONS**

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

1538 (03-01)                                      Page 3 of 4                                      ORIGINAL

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _Johnny Tarver_____
JOHNNY TARVER

X _Larri J. Tarver_____
LARRI J TARVER

Pay to the order of

Without Recourse
Washington Mutual Bank, FA

Jess Almanza, AVP

# Exhibit "B"

Recording Requested By
Fidelity National Title

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

2003-0095061

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

| Recorded | REC FEE 58.00 |
| Official Records | |
| County Of | |
| SANTA BARBARA | |
| JOSEPH E. HOLLAND | |
| Recorder | |
| | DHP |
| 08:00AM 17-Jul-2003 | Page 1 of 18 |

18

## SECURITY INSTRUMENT COVER SHEET

Please print or type information
Document Title(s) (or transactions contained therein):

1. Deed of Trust

Grantor/Trustor/Mortgagor(s) (Last name first, then first name and initials)
1. JOHNNY TARVER
2. LARRI J TARVER
3.
4.
5. ☐   Additional names on page _____ of document.

Grantee/Beneficiary/Mortgagee(s)
1. Washington Mutual Bank, FA

Legal Description (abbreviated: i.e. lot, block, plat or section, township, range)

LOT 5 OF VICTORIA PARK SUBDIVISION, IN THE CITY OF SANTA BARBARA, COUNTY OF
SANTA BARBARA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 71, PAGE 42
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

☐   Additional legal is on page _____ of document.

Assessor's Property Tax Parcel/Account Number(s)

1. 03532014                         2.

3.                                  4.

This document prepared by:

ARACELI DUMLOA
1330 STATE ST
SANTA BARBARA, CA 93101

2636 (12-00)                                        TO BE RECORDED



AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

————————— [Space Above This Line For Recording Data] —————————

FIDELITY NATIONAL TITLE CO

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated _____ July 3, 2003 _____ , together with all Riders to this document.

(B) "Borrower" is _ JOHNNY TARVER AND LARRI J. TARVER, HUSBAND AND WIFE AS JOINT TENANTS _____

Borrower is the trustor under this Security Instrument.

(C) "Lender" is _____ Washington Mutual Bank, FA, a federal association _____ .
Lender is a _____ Bank _____ organized and existing under the laws of _ United States of America _____ . Lender's address is _____ 400 East Main Street Stockton, CA 95290 _____ .
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is _____ CALIFORNIA RECONVEYANCE COMPANY _____ .

(E) "Note" means the promissory note signed by Borrower and dated ___ July 3, 2003 ___ .
The Note states that Borrower owes Lender _ Three Hundred Thousand & 00/100 _____

Dollars (U.S. $ ___ 300,000.00 ___ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than ___ August 1, 2033 ___ .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA
32936 (05-01)                    Page 1 of 17                    TO BE RECORDED

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ 1-4 Family Rider
☐ Graduated Payment Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ Balloon Rider     ☐ Rate Improvement Rider     ☐ Second Home Rider
☐ Other(s) (specify)

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

CALIFORNIA
32838 (06-01)

TO BE RECORDED

grants and conveys to Trustee, in trust, with power of sale, the following described property located in ___Santa Barbara_____ County, California:

LOT 5 OF VICTORIA PARK SUBDIVISION, IN THE CITY OF SANTA BARBARA, COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 71, PAGE 42 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

which currently has the address of __1255 KENWOOD ROAD_____ ,
[Street]

___SANTA BARBARA_____ , California ____93109____ ("Property Address"):
[City]　　　　　　　　　　　　　　　　　[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic

CALIFORNIA
32838 (05-01)

Page 3 of 17

TO BE RECORDED

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance of the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such polices shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in

connection with any damage to such property, resulting from any cause or causes whatsoever, including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further

CALIFORNIA
32836 (05-01)

Page 7 of 17

TO BE RECORDED

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

CALIFORNIA
32636 (05-01)                          Page 8 of 17                          TO BE RECORDED

and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 effects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage Insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is

less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in Interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by

conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument,

Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in Interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note.) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the

and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CALIFORNIA
11838 N5-01J

Page 14 of 17

TO BE RECORDED

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the of the occurrence of and event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender or the Trustee (whether or not the Trustee is affiliated with Lender) may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution. Trustee may destroy the Note and the Security Instrument three (3) years after issuance of a full reconveyance or release (unless directed in such request to retain them).

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

X _____
JOHNNY TARVER

X _____
LARRY J TARVER

———————————— (Space Below This Line For Acknowledgment) ————————————

State of CALIFORNIA )
) SS.
County of Santa Barbara )

On _July 9, 2003_____, before me, _Donna L. Quaglia_
_____, a Notary Public in and for the State of
California, personally appeared _Johnny Tarver & Larci L. Tarver_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

Witness my hand and official seal

Signature _Donna L. Quaglia_
Notary Public in and for the State of California

DONNA L. QUAGLIA
Commission # 1241590
Notary Public - California
Santa Barbara County
My Comm. Expires Dec 1, 2003

# Exhibit "C"

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #

2012-0070076

Recorded          | REC FEE      18.00
Official Records  |
County of         | OVERPAYMENT  10.00
Santa Barbara     |
Joseph E. Holland |
County Clerk Recorder |
                  | JS
08:48AM 18-Oct-2012 | Page 1 of 1

ATDE
0/10.00

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone #
(866) 756-8747, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned,
**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A
WASHINGTON MUTUAL BANK,FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203,
(ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust without recourse,
representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due
thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **JOHNNY TARVER AND LARRI J. TARVER** and recorded on 07/17/2003 as Instrument #
2003-0095061 in Book n/a, Page n/a in the office of the SANTA BARBARA County Recorder, California.

Property more commonly known as: 1255 KENWOOD ROAD, SANTA BARBARA, CA 93109

**This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate
capacity or as Receiver.**

**This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as
authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)**

IN WITNESS WHEREOF, this Assignment is executed on _**09 / 04**_ /2012 (MM/DD/YYYY)
**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A
WASHINGTON MUTUAL BANK,FA, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its
Attorney-in-Fact POA RECORDED: 10/25/2011 DOC#: 20111025**

By: _Sandy N Wells_ .

**VICE PRESIDENT**

## ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On _**09 / 04**_ /2012 (MM/DD/YYYY), before me appeared _Sandy N Wells_ ., to me
personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF
WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA and that the instrument was signed on behalf of
the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be
the free act and deed of the corporation (or association).

_Eva Reese_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

EVA REESE
NOTARY
17070
PUBLIC

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
JPCAS        WAMU        [C] FRMCA1_JPCAS3

Recording Requested By Simplifile

**2014-0058508**

| | |
|---|---|
| Recorded | REC FEE     28.00 |
| Official Records | |
| County of | |
| Santa Barbara | |
| Joseph E. Holland | |
| County Clerk Recorder| |
| | MB |
| 08:46AM 19-Dec-2014 | Page 1 of 2 |

Recording Requested By:
**PeirsonPatterson, LLP**
And When Recorded Mail To:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

————————[Space Above This Line For Recording Data]————————

Loan No.: ███
FNMA Loan No.: ███

# CALIFORNIA ASSIGNMENT OF DEED OF TRUST

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254**, all beneficial interest under a certain Deed of Trust dated **July 3, 2003** and recorded on **July 17, 2003**, made and executed by **JOHNNY TARVER AND LARRI J. TARVER**, to **CALIFORNIA RECONVEYANCE COMPANY**, Trustee, upon the following described property situated in **SANTA BARBARA** County, State of California:
Property Address: **1255 KENWOOD ROAD, SANTA BARBARA, CA 93109**

**LOT 5 OF VICTORIA PARK SUBDIVISION, IN THE CITY OF SANTA BARBARA, COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 71, PAGE 42 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

such Deed of Trust having been given to secure payment of **Three Hundred Thousand and 00/100ths ($300,000.00)**, which Deed of Trust is of record in Book, Volume, or Liber No. N/A, at Page N/A (or as No. **2003-0095061**), in the Office of County Recorder of SANTA BARBARA County, State of California.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

TS No.: ▮▮▮▮▮▮▮▮▮▮
Page 2

**JPMorgan Chase Bank, National Association, Successor in Interest by Purchase from the Federal Deposit Insurance Corporation, as Receiver of Washington Mutual Bank, Formerly known as Washington Mutual Bank, FA.**

By: _____
Brandon W Johnson
Vice President

State of: ___Ohio___ )

County of: ___Franklin___ )

On this 28 June 2012 before me _____Robert D Williams_____ a notary public personally appeared ___Brandon W Johnson___ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the state of _____Ohio_____ that the foregoing paragraph is true and correct.

*Witness my hand and official seal.*

_____ (NOTARY SEAL)
Signature       Robert D Williams

**ROBERT D WILLIAMS**
**NOTARY PUBLIC**

**STATE OF OHIO**

My Comm. Expires January 14, 2017

NOTARIAL SEAL · STATE OF OHIO

2017-0002932

| Recorded | REC FEE | 25.00 |
| Official Records | | |
| County of | OVERPAYMENT | 10.00 |
| Santa Barbara | | |
| Joseph E. Holland | | |
| County Clerk Recorder | | |
| | CT | |
| 08:29AM 19-Jan-2017 | Page 1 of 1 | |

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Neuberger Berman Investment Advisers, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Regarding this instrument, contact Fay Servicing, LLC., 440 S. LaSalle Street, 20th Floor, Chicago, IL 60605, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 13150 WORLDGATE DR., HERNDON, VA 20170-0000, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **PROF-2013-S3 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, WHOSE ADDRESS IS 60 LIVINGSTON AVENUE, EP-MN-WS3D, Attention: Structured Finance Services-PROF, ST. PAUL, MN 55107 (800)934-6802, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **JOHNNY TARVER AND LARRI J. TARVER** and recorded on 07/17/2003 as **Doc # 2003-0095061** in the office of the **SANTA BARBARA** County Recorder, **CA**.

Dated on ___/_6_/2017 (MM/DD/YYYY)
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact**

By: _____
    Daniel Thompson
    VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___/_6_/2017 (MM/DD/YYYY), by Daniel Thompson as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Danielle Kennedy FF 031287
Notary Public - State of FLORIDA
Commission expires: 06/26/2017

DANIELLE KENNEDY
Notary Public - State of Florida
My Commission #FF 031287
Expires June 26,2017

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
NB001          FN_AVR_ASN    DOCR          10:40:17 [C-1]  FRMCA1

2017-0042344

| | |
|---|---|
| Recorded | REC FEE    28.00 |
| Official Records | |
| County of | |
| Santa Barbara | |
| Joseph E. Holland | |
| County Clerk Recorder | |
| | MG |
| 01:51PM 31-Aug-2017 | Page 1 of 2 |

Recording Requested By Simplifile
Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ▊
Svcr Ln N ▊

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **PROF-2013-S3 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE**, whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 7/3/2003
Original Loan Amount: **$300,000.00**
Executed by (Borrower(s)): **JOHNNY TARVER & LARRI J. TARVER**
Original Trustee: **CALIFORNIA RECONVEYANCE COMPANY**
Original Beneficiary: **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: **2003-0095061** in the Recording District of **SANTA BARBARA, CA**, Recorded on **7/17/2003**.

Property more commonly described as: **1255 KENWOOD ROAD, SANTA BARBARA, CALIFORNIA 93109**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: August 4, 2017

**PROF-2013-S3 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, BY PRESTON RIDGE PARTNERS III, LLC, ITS ATTORNEY-IN-FACT**

By: **SCOTT GILBERT**          Witness/Name: Julie Michels   JULIE MICHELS
Title: **MANAGER**

NB_Apr17

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ___Arizona___
County of ___Maricopa___

On __August 4, 2017__ before me, __Alexandria Davies__, a Notary Public, personally appeared **SCOTT GILBERT, MANAGER of/for PRESTON RIDGE PARTNERS III, LLC, AS ATTORNEY-IN-FACT FOR PROF-2013-S3 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of __Arizona__ that the foregoing paragraph is true and correct. I further certify SCOTT GILBERT, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): __Alexandria Davies__
My commission expires: __October 15, 2020__

ALEXANDRIA JEAN DAVIES
Notary Public - Arizona
Maricopa County
My Comm. Expires Oct 15, 2020

NB_Apr17

1
2
3
4
5

Allison Schmidt, ESQ.
Nevada Bar No.: 10743
GHIDOTTI BERGER
8716 Spanish Ridge Ave #115
Las Vegas, NV  89148
Tel: (949) 427-2010
Fax:  (949) 427-2732
Email: aschmidt@ghidottiberger.com

6
7
8

Attorney for Creditor
US Bank Trust N.A., as Trustee of
Igloo Series III Trust

9

UNITED STATES BANKRUPTCY COURT

10

DISTRICT OF NEVADA

11

LAS VEGAS DIVISION

12
13
14
15
16
17
18
19
20

In Re:                                                      )        CASE NO.:  19-12115-abl
                                                               )
JOHNNY TARVER,                              )        CHAPTER 13
                                                               )
          Debtor.                                        )        **CERTIFICATE OF SERVICE**
                                                               )
                                                               )
                                                               )
                                                               )
                                                               )
                                                               )
                                                               )
_____)

21
22

<u>**CERTIFICATE OF SERVICE**</u>

23
24
25
26

          I am employed in the County of Orange, State of California.  I am over the age of

eighteen and not a party to the within action.  My business address is: 1920 Old Tustin

Avenue, Santa Ana, CA 92705.

27
28

          I am readily familiar with the business's practice for collection and processing of

correspondence for mailing with the United States Postal Service; such correspondence would

1    be deposited with the United States Postal Service the same day of deposit in the ordinary

2    course of business.

3    On August 26, 2019 I served the following documents described as:

4

5    • **MOTION FOR RELIEF FROM STAY (11 U.S.C. Section 362 Bankruptcy
         Rule 4001)**

6

7    on the interested parties in this action by  placing a true and correct copy thereof in a sealed

8    envelope addressed as follows:

9    (Via United States Mail)

| Debtor | Debtor's Counsel |
|---|---|
| JOHNNY TARVER | CHRISTOPHER PATRICK BURKE |
| 1920 ASBURN DR. | 218 S MARYLAND PKY. |
| North Las Vegas, NV 89032 | LAS VEGAS, NV 89101 |
|  |  |
|  | **Trustee** |
|  | KATHLEEN A. LEAVITT |
|  | 711 SOUTH 4TH ST SUITE # 101 |
|  | LAS VEGAS, NV 89101 |

15

16    __xx__ (By First  Class Mail) At my business address, I placed such envelope for deposit with
       the United States Postal Service  by placing them for collection and mailing on that date

17    following ordinary business practices.

18    _____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the

19    Eastern District of California

20    __xx__ (Federal) I declare under penalty of perjury under the laws of the United States of

21    America that the foregoing is true and correct.

22          Executed on August 26, 2019 at Santa Ana, California

23    _/s/ Enrique Alarcon_
       Enrique Alarcon

24

25

26

27

28

---

2

CERTIFICATE OF SERVICE